In the Matter of the Compensation of
John G. Williamson, Claimant.

**SAIF CORPORATION**
and Clackamas County School District #108,
*Petitioners,*

*v.*

John G. WILLIAMSON,
*Respondent.*

(WCB 91-12264; CA A80654)

882 P2d 621

James W. Moller, Special Assistant Attorney General, argued the cause for petitioners. With him on the brief were

Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Helen T. Dziuba argued the cause for respondent. On the brief were Kimberley Chaput and Pozzi, Wilson and Atchison.

Before Deits, Presiding Judge, and Richardson, Chief Judge, and Riggs, Judge.

DEITS, P. J.

## DEITS, P. J.

In this workers' compensation case, employer seeks reversal of an order of the Board that increased claimant's scheduled permanent disability award for his right leg to 18 percent. We affirm.

In 1968, claimant had a non-work-related accident, which resulted in a below-the-knee amputation of his right leg. In 1977, he went to work as a school custodian. He was able to satisfactorily perform the responsibilities of that job until 1986, when he was transferred to a position that required more walking and allowed him less time off his feet. He then developed a swelling and weeping out of his right leg stump. In 1987, he left his job as a custodian.

Claimant then filed a workers' compensation claim for cellulitis of the right stump, which was accepted by his employer. In April, 1991, his claim was closed with an award of five percent scheduled permanent disability of the right foot. Claimant requested a hearing on the award. After the hearing, the referee increased the award of scheduled permanent disability to 18 percent for loss of use of the right leg. The referee's order included a value based on OAR 436-35-200(4),[1] for claimant's permanent inability to walk or stand for greater than two hours in an eight-hour period. The Board affirmed the increased award, explaining:

> "An award of 15 percent impairment pursuant to OAR 436-35-200(4) requires objective medical evidence of inability to walk or stand for greater than two hours. Here, although Dr. McKillop stated that he could not provide objective findings for claimant's inability to walk or stand for greater than two hours, he nevertheless concluded that claimant was unable to walk or stand for more than two hours. Similarly, Dr. Thomas thought claimant's ambulatory potential was very limited, yet his physical examination of the stump appeared negative: The stump looks good, without blisters or callouses, is non-tender, has full range of

---

[1] OAR 436-35-200(4) provides, in part:

"When a preponderance of objective medical evidence indicates an accepted compensable injury to the foot has resulted in a permanent inability to walk or stand for greater than two hours in an eight-hour period, the award shall be 15 percent of the foot. This value is combined with all other scheduled impairment findings in the foot."

motion, no pain and the prosthesis is wearing well. The record shows that each physician's conclusion regarding claimant's inability to walk or stand for more than two hours was based on his evaluation of the worker's description of his limitations, which is sufficient to establish 'objective findings.' *Georgia-Pacific Corp. v. Ferrer*, 114 Or App 471[, 835 P2d 949] (1992)." (Exhibit references omitted.)

Employer argues that the Board erred in increasing the award of scheduled permanent disability. It contends that the Board improperly relied on our decision in *Georgia-Pacific Corp. v. Ferrer, supra*, for the proposition that a physician's evaluation of a worker's description of his limitations may alone constitute "objective findings," as required by ORS 656.726(3)(f)(B).[2] Employer contends that there is a complete absence of "objective findings" here and that, therefore, there was no basis for the Board to increase claimant's award.

The issue in *Ferrer* was very similar to the one presented here. We characterized the question in that case as whether a physician's evaluation of a worker's subjective complaints constitutes "objective medical findings." However, employer is correct that, unlike in this case, in *Ferrer*, there was more than a physician's evaluation of a claimant's subjective complaints. In addition to the physician's evaluation of the subjective complaints, on examination, the physician observed some physical evidence of the condition; namely, muscle spasms and tenderness. In reaching the conclusion in *Ferrer* that there was objective medical evidence to support a determination of compensability, we indicated that we relied on *both* the physician's evaluation of the subjective complaints and the physician's observation of physical symptoms:

---

[2] ORS 656.726(3) provides, in part:

"The director hereby is charged with duties of administration, regulation and enforcement of ORS 654.001 to 654.295, 654.750 to 654.780 and this chapter. To that end the director may:

"* * * * *

"(f) Provide standards for the evaluation of disabilities. The following provisions apply to the standards:

"* * * * *

"(B) Impairment is established by a preponderance of medical evidence based upon objective findings."

"[O]n the basis of their objective evaluations of claimant's complaints of pain in specific areas of his back and his muscular responses during physical examinations, all three doctors in this case concluded that claimant suffers from a cervical dorsal strain." 114 Or App at 475.

Similarly, our holdings in *SAIF v. Cruz*, 120 Or App 65, 67, 852 P2d 247 (1993), and *Hewlett-Packard Co. v. Holden*, 115 Or App 390, 838 P2d 643 (1992), on which employer relies, also involve circumstances where there was some corroborating physical evidence of the claimant's subjective complaints that the physician considered in evaluating the claimant's condition.

■  In *Stanley Smith Security v. Pace*, 118 Or App 602, 848 P2d 1218, *rev den* 317 Or 272 (1993), however, in the context of an aggravation claim, we held that a chiropractor's evaluation of a claimant's subjective complaints constituted objective findings sufficient to support a determination that the claimant's condition had worsened and was compensable. In that case, as in *Georgia-Pacific Corp. v. Ferrer, supra*, we quoted with approval the Board's understanding of the legislative intent regarding the use of the term "objective findings":

> " ' "[T]he legislature did not intend to exclude those findings based on an injured worker's subjective complaints. Rather, we believe that the intent was to require a determination by a physician, based on examination of the injured worker, that an injured worker has a disability or need for medical services. *Such a finding* may be based on a physically verifiable impairment, but, as stated by the committee members, *may also be based on the physician's evaluation of the worker's description of the pain that she is experiencing.*" ' " 118 Or App at 605. (Citation omitted; emphasis in original.)

We continue to believe that that understanding of the legislative intent is correct and that a physician's evaluation of a worker's subjective complaints may itself constitute objective findings under ORS 656.726(3)(f)(B).

Employer argues that our earlier decisions concerning what constitutes "objective findings" are distinguishable because they all concerned the meaning of the term in the context of compensability claims under ORS 656.005(7), rather than, as here, in the context of a dispute regarding the

extent of impairment. ORS 656.726(3)(f)(B). We do not believe that this distinction makes a difference. The term "objective findings" is defined in ORS 656.005(19):

> " 'Objective findings' in support of medical evidence include, *but are not limited to*, range of motion, atrophy, muscle strength, muscle spasm and diagnostic evidence substantiated by clinical findings." (Emphasis supplied.)

ORS 656.003 provides that, "[e]xcept where the context otherwise requires, the definitions in this chapter govern its construction." There is no indication either in the text or context of the statutes or in the legislative history that the meaning of "objective findings" as used in ORS chapter 656 should vary by context.

■     Here, the physicians evaluated claimant's subjective complaints. Claimant's treating physician, McKillop, concluded:

> "It would be my opinion that this man is severely limited in his ability to stand and walk. He should have a sitting job. Basically, that is what he is doing in running his toy shop. He sits most of the time and moves from one chair to another as he talks to customers."

McKillop also indicated that claimant was limited by an inability to walk or stand for greater than two hours in an eight-hour period. Dr. Thompson, who performed an independent medical examination, concluded:

> "[Claimant] has never been able to return to his previous functional level where he was working as a custodian. It is felt that he is not able to return to work as a custodian even if it was modified. At the present time, his ambulatory potential is very limited and he needs a full-time sedentary job."

There is no physical evidence corroborating the physicians' evaluations. Nonetheless, for the reasons discussed above, we conclude that the physicians' evaluations of claimant's subjective complaints are objective findings sufficient to support the Board's determination that claimant's award of scheduled permanent disability should be increased to 18 percent.

Affirmed.